

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| DIETRICH EARL SHANNON, | § | No. 08-13-00320-CR |
| Appellant, | § | Appeal from the |
| v. | § | Criminal District Court No. 7 |
| THE STATE OF TEXAS, | § | of Dallas County, Texas |
| Appellee. | § | (TC# F-1259228-Y) |

## **O P I N I O N**

Appellant Dietrich Shannon was convicted of murder and sentenced to life. On appeal, Appellant contends the evidence was insufficient to support the jury's rejection of his claims of self-defense and sudden passion. He also contends the trial court erroneously charged the jury on those two issues, and that the trial court erroneously failed to charge the jury on the lesser-included offenses of manslaughter and criminally negligent homicide. We conclude the evidence was sufficient to support the jury's verdict and the trial court did not err in charging the jury. Accordingly, we affirm.[1]

## **BACKGROUND**

---

[1] This case was transferred from our sister court in Dallas, and we decide it in accordance with the precedent of that court to the extent required by TEX.R.APP.P. 41.3.

At 3 a.m. the morning of August 17, 2012, Dallas firefighters were called to the scene of a dumpster fire, where they found the charred body of an adult woman. The victim's body was wrapped in a blanket with tape, and a ligature was found around her neck. The victim's identity was quickly established based on her prior criminal record with the Dallas County Sheriff's Office and the Dallas Police Department.

Shortly thereafter, an informant arrived at the Dallas Police Department and confessed that he had assisted Appellant in transporting the victim's body in the trunk of his car from Appellant's residence to the dumpster, and that he had observed Appellant pour gasoline into the dumpster and light it on fire. A search of the informant's car uncovered two plastic gas cans in the backseat.

The police obtained a search warrant of Appellant's residence, and found blood on clothing in an armoire in Appellant's bedroom. Subsequent testing indicated the blood and the DNA on the clothing matched the victim's DNA. The police also found a roll of tape in Appellant's bedroom that was similar to the tape used to wrap the victim. Subsequent testing revealed the tape contained DNA matches for both the victim and Appellant. Police also found a latex glove in Appellant's bedroom, as well as drug paraphernalia. Appellant's DNA was not found on the belt wrapped around the victim's neck. A forensic biologist testified, however, that if Appellant had been wearing gloves when he strangled the victim, it was possible his genetic markers would not have been found on the belt. Further, the witness explained, the fire could have degraded any DNA left on the belt.

Appellant was arrested and transported to the police station. After being warned of his rights, Appellant waived his right to counsel and spoke to a detective during a videotaped interview. Appellant acknowledged he was acquainted with the victim, but initially denied

2

having any knowledge of her death. After the detective confronted Appellant with the information the police had obtained, however, Appellant confessed to killing the victim at his residence two days earlier. Appellant claimed that on the evening of the killing, he and the victim were smoking crack cocaine together in his bedroom, when they became embroiled in an argument in which the victim claimed Appellant owed her money. Appellant stated the victim threatened to steal a car from his residence and to come back later with a "Taser." Appellant asserted the victim then "swung" at him, and that he reacted by swinging back at her, causing her to fall backwards and hit her head on a dresser in his bedroom. According to Appellant, blood started coming out of the victim's mouth. He became "scared" and wrapped the victim in a blanket, placed tape around her body, and put her body in an armoire in his bedroom. The victim's body remained in the armoire for two days until he contacted his friend (the informant) to help him dispose of her body.

Appellant stated the entire incident happened very fast, and insisted the victim's death was an accident. Appellant expressly denied having any knowledge of a cord or other object being wrapped around the victim's neck, and instead consistently claimed the victim had simply fallen backwards and hit her head during their fight, presumably resulting in her death.[2]

Dr. Joni McClain, the Deputy Chief Medical Examiner in Dallas County, performed an autopsy on the body. Dr. McClain testified that when the victim's body was initially brought to the examiner's office, there was a belt wrapped tightly around the victim's neck, circling it three times. Dr. McClain determined the victim had died from "ligature strangulation." Dr. McClain

---

[2] Shortly after the detective left the interview room, Appellant had a recorded conversation with his father, in which he repeated the same version of the events. During this conversation, Appellant again repeated that he did not mean to harm the victim.

also concluded the victim had not suffered any injuries to her head, skull, or scalp area, or from any other blunt trauma, prior to her death.

Evidence was introduced at trial that the victim had a prior criminal record, which included at least one family violence assault conviction. The detective who interviewed Appellant at the time of his arrest also testified that he had previously met the victim years earlier when she was a possible witness to a murder in Dallas. The detective described the victim as a "pretty tough gal" who could be "pretty abrasive." He further stated that in light of the victim's past criminal history involving "violent behavior," and the fact that she was a drug user, he was not surprised to learn she had been in a fight with Appellant.

In his closing argument, Appellant's attorney acknowledged that Appellant had killed the victim, but claimed that Appellant had acted in self-defense. He asserted that both parties were "using crack and drugs" when they became embroiled in a "drug-induced" fight over money, which turned deadly. Counsel claimed that during this fight, the victim threatened and "attacked" Appellant first, causing him to defend himself by swinging back at her. Appellant's attorney also pointed to the victim's criminal history and the detective's testimony that the victim was a "tough, rough, aggressive person," as justification for Appellant's admittedly forceful reaction to her.

The jury was instructed on the issue of self-defense, but the jury rejected that defense, finding Appellant guilty of murder. During punishment, the jury was also instructed that the murder charge could be reduced to a second-degree felony if it found Appellant had acted under the "immediate influence of sudden passion arising from an adequate cause," but the jury rejected that defense as well. The State sought to enhance Appellant's sentence with two prior felony

4

convictions to which Appellant pled not true. The jury found both enhancement allegations to be true, and assessed a life sentence against Appellant.

## DISCUSSION

### Legally Sufficient Evidence Supported the Jury's Rejection of Appellant's Claim of Self-Defense

In his first issue, Appellant contends the evidence was legally insufficient to allow the jury to reject his claim of self-defense, and that no rational juror could have found against him on that issue.

*Standard of Review and Applicable Law*

Self-defense is statutorily defined: "A person is justified in using deadly force against another: (1) if the actor would be justified in using force against the other under Section 9.31; and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary[.]" TEX. PENAL CODE ANN. § 9.32 (West 2011). Section 9.31 provides that "a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Id.* at § 9.31 (West 2011).

The defendant has the initial burden to produce some evidence to support a claim of self-defense. *See Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.Crim.App. 2003). But once the defendant produces some evidence, the burden shifts to the State, which bears the ultimate burden of persuasion to disprove the raised defense. *Saxton v. State,* 804 S.W.2d 910, 913 (Tex.Crim.App. 1991). The State cannot meet its burden by simply refuting the self-defense claim; rather, the State must prove its case beyond a reasonable doubt. *Id.*

5

We review the legal sufficiency of the evidence to support a jury's rejection of a self-defense claim under the *Jackson v. Virginia* standard. *Smith v. State,* 355 S.W.3d 138, 144 (Tex.App. – Houston [1st Dist.] 2011, pet. ref'd) (applying standard to jury's rejection of self-defense claim); *see also Saxton,* 804 S.W.2d at 914 (distinguishing standard of review for defensive claims in which State bears the burden of persuasion and affirmative defenses in which defendant bears the burden of proof). Under that standard, a reviewing court must examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In self-defense cases, this requires a court to review all of the evidence presented at trial in the light most favorable to the prosecution to determine if any rational trier of fact would have found the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914. Further, the court must defer to the jury's determinations of the witnesses' credibility and the weight to be given their testimony, as the jury is the sole judge of those matters. *Jackson,* 443 U.S. at 326, 99 S.Ct. at 2793; *Brooks v. State,* 323 S.W.3d 893, 899–900 (Tex.Crim.App. 2010) (plurality op.); *see also Hargrove v. State,* No. 05-11-00307-CR, 2012 WL 3553501, at *3-4 (Tex.App. – Dallas Aug. 20, 2012, pet. ref'd). We must be mindful that self-defense is a fact issue to be determined by the jury, and that the jury is free to accept or reject any defensive evidence on the issue. *Saxton,* 804 S.W.2d at 913-14.

*Analysis*

The trial court instructed the jury on the definition of self-defense in accordance with the applicable law, and further instructed the jury that if it had a reasonable doubt whether Appellant

6

was acting in self-defense, it "should give the benefit of that doubt to defendant and find him not guilty."[3]

In finding Appellant guilty of murder, the jury rejected Appellant's claim of self-defense. *Saxton,* 804 S.W.2d at 914 (a jury's guilty verdict "is an implicit finding rejecting the defendant's self-defense theory"). Appellant argues, however, that no rational jury could have rejected his claim of self-defense, asserting that he presented conclusive evidence to support that claim and that the State did not meet its burden of disproving the claim beyond a reasonable doubt.

In support of this argument, Appellant first points to the statements he made during his videotaped confession to the effect that he had become embroiled in an argument with the victim while they were both "high on crack." Appellant asserts that during this altercation, the victim "exploded" at him, "threatened to steal a car out of the backyard and to taze [sic] [him]," and then "violently attacked Appellant, swinging at him." Appellant then points to the detective's testimony that the victim was a "tough, mean woman who was a drug addict," to justify his reaction of swinging back at the victim in self-defense, causing her to hit her head on a dresser in her bedroom. Apparently now willing to concede on appeal that he later "wrapped a belt around

---

[3] The trial court instructed the jury that: "a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force. The actor's belief that the force was immediately necessary is presumed to be reasonable if the actor knew or had reason to believe that the person against whom the force was used was committing or attempting to commit unlawful deadly force and did not provoke the person against whom the force was used and was not otherwise engaged in criminal activity. A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force. A person who has a right to be present at the location where the deadly force is used, and has not provoked the person against whom the deadly force has been used and is not engaged in criminal activity at the time the deadly force is used, is not required to retreat before using deadly force as described. For the purpose of determining whether the actor reasonably [believed] that deadly force was necessary, you may not consider whether the actor failed to retreat."

[the victim's] neck" and strangled her, Appellant contends that "that fact does not obviate his right to defend himself against the actual and perceived deadly attack on him by [the victim]."[4]

In his videotaped confession, however, Appellant never indicated that the victim had a weapon of any kind at the time of their altercation, and never said that the victim made an immediate threat to "taze" Appellant; instead, as indicated above, Appellant stated that the victim's only threat was to return with a Taser at an unspecified time in the future. Additionally, the medical examiner testified that at the time of her death, the victim was 5' 5" and weighed only 126 pounds, while Appellant concedes that he was a "large man" in comparison to the victim's "diminutive" stature. Therefore, a rational jury could have concluded that the victim's act of swinging at Appellant and threatening to return at a later date with a "Taser," would not have caused a reasonable person to believe that it was "immediately necessary" to respond with deadly force in order to defend himself.

In addition, the jury was presented with a version of the facts at trial that differed significantly from the version described by Appellant in his videotaped confession. In particular, the State presented the testimony of the medical examiner, who repeatedly stated that she observed no physical signs of a head injury on the victim that would have supported Appellant's claim that the victim fell backwards and hit her head during the parties' altercation; instead the medical examiner testified that the victim died solely due to ligature strangulation. Based on this contradictory evidence, the jury could have reasonably concluded that Appellant was not credible, and could have rationally concluded Appellant's claim of self-defense was fabricated. *See Villarreal v. State,* No. 04-13-00553-CR, 2015 WL 1939284, at *6 (Tex.App. – San Antonio Apr.

_____

[4] We note that although Appellant never conceded this fact at trial, he now admits in at least two points in his brief that he did in fact strangle his victim.

8

29, 2015, no. pet. h.) (mem. op., not designated for publication) (jury's decision to reject defendant's claim of self-defense ultimately hinged on the credibility of the witnesses and the jury was therefore free to reject the defendant's version of what occurred at the time of the victim's death).

Moreover, at best, the evidence presented to the jury was conflicting on what happened the night of the killing; the jury was free to resolve any conflicts in the evidence in favor of the State. *See, e.g., Thompson v. State*, No. 05-12-00259-CR, 2014 WL 1477676, at *4 (Tex.App. – Dallas Apr. 14, 2014, no pet.) (mem. op., not designated for publication) (where State presented evidence that conflicted with the defendant's version of the events, the jury was free to resolve any conflicts in the evidence against the defendant and to reject the defendant's claim of self-defense); *Campa v. State,* No. 05-07-01210-CR, 2009 WL 1887123, at *5 (Tex.App. – Dallas July 2, 2009, pet. ref'd) (not designated for publication) (jury was free to reject defendant's claim of self-defense in favor of the State's evidence); *see also Smith v. State,* 355 S.W.3d 138, 146 (Tex.App. – Houston [1st Dist.] 2011, pet. ref'd) (statement of appellant and his witnesses did not conclusively prove claim of self-defense in light of other evidence presented by the State).

We conclude the record contained sufficient evidence from which a rational jury could have rejected Appellant's claim of self-defense, and accordingly, we overrule Appellant's first issue.

**The Trial Court Properly Instructed the Jury that**
**Appellant did not have a Duty to Retreat**

In Issue Two, Appellant contends the trial court's instructions on the issue of self-defense were erroneous, and deprived him of a fair trial because they improperly suggested to the jury that

9

he had a "general duty to retreat," when no such duty existed under the revisions made to the self-defense statute in 2007.

*Standard of Review*

The purpose of a jury charge is to instruct the jury on the law that applies to the case and to "guide them in its application to the case[.]" *Delgado v. State,* 235 S.W.3d 244, 249 (Tex.Crim.App. 2007); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) (trial court shall give jury "a written charge distinctly setting forth the law applicable to the case"). When reviewing claims of jury charge error, we must first determine whether an error actually exists in the charge. *See Kirsch v. State,* 357 S.W.3d 645, 649 (Tex.Crim.App. 2012); *Barrios v. State,* 283 S.W.3d 348, 350 (Tex.Crim.App. 2009). If error exists and appellant failed to object to the charge, we will not reverse for jury charge error unless the record shows that the appellant suffered egregious harm as a result of the error. *Barrios*, 283 S.W.3d at 350.

*Invited Error*

Initially, we note that it is unclear if Appellant is simply unhappy with the language used by the trial court in its "no duty to retreat" instruction, or whether Appellant is contending that the trial court should not have provided any instruction regardless of how it was worded. To the extent that he is arguing the latter position, we believe Appellant is prohibited from raising this issue on appeal. Appellant expressly asked the trial court to provide an instruction to the jury regarding the law relating to "no duty to retreat." A party cannot invite an error at trial and then complain of it on appeal. *See Tucker v. State,* 771 S.W.2d 523, 534 (Tex.Crim.App. 1988); *Livingston v. State,* 739 S.W.2d 311, 341 (Tex.Crim.App. 1987); *Cadd v. State,* 587 S.W.2d 736, 741 (Tex.Crim.App. 1979). Consequently, if a defendant requests a jury charge and that charge is

given as requested, he is in no position to complain of any error therein on appeal. *Cadd,* 587 S.W.2d at 741; *see also McCray v. State,* 861 S.W.2d 405, 409 (Tex.App. – Dallas 1993, no pet.); *Hargrove,* 2012 WL 3553501, at \*9 (where defendant requested instruction on "no duty to retreat" provisions in the law, he could not be heard to complain of error in the instruction on appeal).

Although it does not appear that Appellant himself proposed the exact language to be included in the "no duty to retreat" instruction, it is undisputed that Appellant did in fact ask the trial court to provide an instruction of this nature, and he does not explain in his brief how he would have preferred the instruction to be worded. In addition, we note that Appellant was given the opportunity to review the jury charge, which contained the complained-of instruction, and expressly advised the trial court that he had no objection to the charge. We will therefore limit our review to determine if the charge correctly set out the law on the issue of "no duty to retreat."

*Applicable Law*

Appellant points out that prior to 2007, the self-defense statute provided that in order to establish a valid claim of self-defense, the defendant had to establish not only that the victim used deadly force against him, but also that "a reasonable person in the [defendant's] situation would not have retreated" prior to using deadly force in response. TEX. PENAL CODE ANN. § 9.32(a)(2) (West 2006).

Appellant correctly points out that this provision was deleted from the statute in 2007, and in its place, the Texas Legislature enacted sections 9.32(c) and (d) to the Penal Code, which provide that a person does *not* have a duty to retreat under the following circumstances:

> (c) A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described by this section.

11

(d) For purposes of Subsection (a)(2), in determining whether an actor described by Subsection (c) reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat. [5]

In discussing this change in the law, the Court of Criminal Appeals explained in *Morales v. State* that before 2007 it was appropriate to instruct a jury that the defendant must have "reasonably believed that a reasonable person in the [defendant's] situation would not have retreated." 357 S.W.3d 1, 4 (Tex.Crim.App. 2011). However, the Court noted, due to the 2007 revisions, trial courts should no longer submit jury instructions on the "general duty to retreat," because those instructions are no longer authorized by statute. *Id.* at 5.

In *Morales*, the trial court was apparently aware of the change in the law, and therefore instructed the jury in accordance with the revised statute, but went on to give additional instructions that required the jury to make a general determination whether the defendant had a duty to retreat. *See id.* at 3, 5-6. The Court in *Morales* did not find any error in the portion of the instruction that "tracked the current statute," explaining that "[i]f a matter is contained within a relevant statute, the trial judge may appropriately instruct the jury on the wording of the statute." *Id.* at 5. However, the Court concluded that it was error to provide additional instructions regarding the defendant's general duty to retreat, because those additional instructions were no longer "authorized by statute" and "constituted [improper] comments on the weight of the evidence." *Id.* at 6.

*Analysis*

---

[5] *See* Acts 2007, 80th Leg., ch. 1, § 3, eff. Sept. 1, 2007.

Although his argument is unclear, Appellant appears to cite *Morales* for the proposition that the trial court's instruction erroneously instructed the jury on the general duty to retreat and constituted an improper comment on the weight of the evidence. *Morales*, however, is clearly distinguishable from the present case. Here, the trial court did not give the jury an instruction on the general duty to retreat; instead, the trial court gave the jury an instruction that mirrored the revised statute on self-defense:

> A person who has a right to be present at the location where the deadly force is used, and has not provoked the person against whom the deadly force has been used and is not engaged in criminal activity at the time the deadly force is used, is not required to retreat before using deadly force as described. For the purpose of determining whether the actor reasonably [believed] that deadly force was necessary, you may not consider whether the actor failed to retreat.

Appellant appears to concede that this instruction tracked the exact language of the revised self-defense statute; he complains without citation to authority, however, that the instruction may have nevertheless somehow misled the jury into believing the defendant had a "general duty to retreat" or that it somehow "focused the jury on a non-existent duty to retreat."[6] We disagree.

Our sister courts have rejected similar arguments challenging so-called "implied" no-duty-to-retreat instructions given to a jury. For example, in *Whitney v. State,* 396 S.W.3d 696, 701–03 (Tex.App. – Fort Worth 2013, pet. ref'd), the court rejected the defendant's argument that the instruction erroneously "implied the existence of a non-existent duty" to retreat. The court concluded that, even if the instruction somehow did imply the existence of a duty to retreat, it was nevertheless a correct statement of the law, and "a trial court will not be held to have erred in its

---

[6] Appellant also points out that the Court in *Morales* stated that an instruction should not be given where the provisions do not apply under the terms of the statute, such as when the defendant provoked the victim, or when the defendant was engaged in criminal activity at the time. *Morales,* 357 S.W.3d at 5. We do not, however, understand Appellant to be contending that the benefits of the "no duty to retreat" language in the statute were not applicable to him for these reasons, particularly in light of his request that the jury be instructed on this issue at trial.

13

jury charge by tracking the law as set out by the legislature." *Id.* at 703*; see also Russell v. State,* No. 03-12-00440-CR, 2014 WL 1572473, at \*4 (Tex.App. – Austin April 18, 2014, pet. ref'd) (mem. op., not designated for publication) (trial court's instruction mirroring the 2007 revisions to the self-defense statute regarding the "no duty to retreat" provision was an appropriate statement of the law, and therefore not given in error).

In the present case, the trial court's instruction on self-defense properly tracked the language of the revised Penal Code, and did not include any additional instructions that would have caused the jury to believe that Appellant had a general duty to retreat. We therefore find that the trial court did not err in providing this instruction to the jury.[7] Accordingly, Appellant's second issue is overruled.

### The Trial Court Properly Refused to Provide Instructions on the Lesser-Included Offenses of Manslaughter and Criminally Negligent Homicide

Appellant was charged with murder by "intentionally and knowingly" causing the death of the victim, or alternatively, intentionally causing "serious bodily injury," thereby resulting in her death. At trial, Appellant requested jury instructions on the lesser-included offenses of manslaughter and criminally negligent homicide, claiming the evidence raised the issues of whether he acted either recklessly or with criminal negligence. Appellant asserted that his videotaped confession constituted evidence that he acted recklessly or with criminal negligence when he swung at the victim, causing her to fall backwards and hit her head. The trial court,

---

[7] In his brief, Appellant makes a general one-sentence allegation that the jury charge did not properly apply the law on the "doctrine of retreat" to the facts of the case, leaving the jury in a "state of confusion as to the application" of the doctrine to the facts. Appellant, however, provides no explanation why he believes the charge would have confused the jury, and cites no authority in support of this claim. Because appellant failed to properly brief this assertion, we decline to address it. *See* TEX.R.APP. P. 38.1(i) (an appellate brief must "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *Lucio v. State,* 353 S.W.3d 873, 877-78 (Tex.Crim.App. 2011) (dismissing appellant's issues because "his brief presents no authority in support of his argument").

14

however, disagreed with Appellant and declined to submit the instructions. In Issues Three and Four, Appellant now contends that this ruling was in error.

*Applicable Law*

We conduct a two-step *Aguilar/Rousseau* analysis to determine whether the trial court should have given the jury a lesser-included offense instruction. *State v. Meru*, 414 S.W.3d 159, 162 (Tex.Crim.App. 2013); *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex.Crim.App. 2012). First, we must determine as a matter of law whether the requested instruction is indeed a lesser-included offense of the offense charged. *Meru*, 414 S.W.3d at 162; *Cavazos*, 382 S.W.3d at 382; *Hall v. State*, 225 S.W.3d 524, 535 (Tex.Crim.App. 2007). To do this, we compare the elements of the offense as alleged in the indictment with those of the requested lesser offense. *Meru*, 414 S.W.3d at 162. This is a question of law that is independent of the evidence produced at trial. *Rice v. State*, 333 S.W.3d 140, 144 (Tex.Crim.App. 2011); *see also Meru,* 414 S.W.3d at 162. Second, as a question of fact, we must determine there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser offense. *See Meru*, 414 S.W.3d at 162–63 (citing *Hall*, 225 S.W.3d at 536); *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex.Crim.App. 2006).

"[A]nything more than a scintilla of evidence may be sufficient to entitle a defendant to a charge on a lesser offense." *Cavazos,* 382 S.W.3d at 385; *see also Meru,* 414 S.W.3d at 163. Further, in determining whether the evidence presented at trial supported an instruction on a lesser-included offense, a reviewing court may not consider whether the evidence presented was "credible, controverted, or in conflict with other evidence." *Moore v. State*, 969 S.W.2d 4, 8 (Tex.Crim.App. 1998).

15

Nevertheless, the evidence supporting an instruction on a lesser-included offense "must still be directly germane to the lesser-included offense[.]" *Cavazos,* 382 S.W.3d at 385; *see also Hampton v. State,* 109 S.W.3d 437, 441 (Tex.Crim.App. 2003) (evidence must be "directly germane" to lesser-included offense before an instruction on a lesser-included offense is warranted). Further, this "threshold requires more than mere speculation – it requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Cavazos,* 382 S.W.3d at 385.

*Analysis*

The State does not dispute that as a legal matter, both manslaughter and criminally negligent homicide are lesser-included offenses of murder, and we agree. *See Cavazos*, 382 S.W.3d at 384 (manslaughter is a lesser-included offense of murder); *Saunders v. State,* 840 S.W.2d 390, 391 (Tex.Crim.App. 1992) (criminally negligent homicide is a lesser-included offense of murder). As such, the only issue for our consideration is whether there was any evidence presented at trial from which a rational jury could have found Appellant guilty of either of the two lesser-included offenses, and not guilty of the greater offense of murder.

Murder is statutorily defined as intentionally or knowingly causing the death of another, or alternatively, intentionally or knowingly causing serious bodily injury to another by committing an "act clearly dangerous to human life," resulting in that person's death. TEX. PENAL CODE ANN. § 19.02 (West 2011). A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* at § 6.03(a) (West 2011). A person acts knowingly when he is

16

aware of the nature of his conduct and that his conduct is reasonably certain to cause the result. *Id.* at § 6.03(b).

Manslaughter is also statutorily defined, and requires a finding that the defendant "recklessly cause[d] the death of an individual." TEX. PENAL CODE ANN. § 19.04(a) (West 2011). A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* at § 6.03(c). A person commits criminally negligent homicide if he causes the death of an individual by criminal negligence. *Id.* at § 19.05(a) (West 2011). A person acts with criminal negligence when he ought to be aware of a substantial and unjustifiable risk that the the result will occur. *Id.* at § 6.03(d).

In light of these definitions, in order for Appellant to have been entitled to an instruction on either manslaughter or criminally negligent homicide, the record had to contain "some affirmative evidence" that Appellant did not intend to kill or cause serious bodily injury to his victim, thereby allowing a rational jury to find him not guilty of murder. In addition, there had to be "some affirmative evidence" from which a rational juror could have concluded that Appellant had the lesser mental state required for manslaughter or criminally negligent homicide, *i.e.*, that he acted either recklessly in conscious disregard of an unjustifiable risk that his conduct would cause the victim's death, or alternatively that he ought to have, but did not, perceive that his conduct would result in the victim's death. *Cavazos,* 382 S.W.3d at 385; *see also Villalba v. State,* No. 05-13-01661-CR, 2015 WL 1514453, at *4-7 (Tex.App. – Dallas Mar. 31, 2015, pet. ref'd) (mem. op., not designated for publication).

In attempting to meet this standard, Appellant relies almost exclusively on the statements he made to the detective during his videotaped confession. In particular, Appellant points out that

17

he stated that he killed the victim unintentionally or by accident, which he believes negated the "mens rea required for murder[.]" In addition, Appellant points out that during his confession, he described a scenario in which he allegedly "struck" the victim, causing her to fall backwards and hit her head on a dresser. According to Appellant, this description of the events, coupled with his statement that the victim died by accident, tended to show by a scintilla of evidence that his conduct was that of a person who either ignored or overlooked a substantial risk that his conduct might cause the victim's death, thereby raising both manslaughter and criminally negligent homicide.

Initially, we note that numerous courts have held that a defendant's statement that he did not intend to kill or cause his victim serious bodily injury, standing alone, does not raise the issue of manslaughter or criminally negligent homicide. *See, e.g., Arnold v. State,* 234 S.W.3d 664, 672 (Tex.App. – Houston [14th Dist.] 2007, no pet.); *Ventura v. State*, No. 05-99-01745-CR, 2001 WL 541090, at *5-6 (Tex.App. – Dallas May 23, 2001, pet. ref'd) (not designated for publication). As the Court of Criminal Appeals noted in *Godsey v. State*, 719 S.W.2d 578, 584 (Tex.Crim.App. 1986), a statement that a defendant did not intend to kill the victim "cannot be plucked out of the record and examined in a vacuum." Instead, regardless of any statements made by the defendant on the issue of his intent, the entire record must still be reviewed to determine if a rational trier of fact could have concluded that the defendant did not in fact act intentionally. *Mathis v. State,* 67 S.W.3d 918, 926 (Tex.Crim.App. 2002).

In conducting this review, numerous courts have held that when the record demonstrates a defendant committed an act that was "clearly dangerous to human life," such as shooting a victim at point blank range or stabbing a victim in the throat, the evidence will not rationally support a

18

finding that the defendant acted recklessly or negligently, even in light of the defendant's testimony that he did not intend to kill his victim. *See, e.g., Cavazos*, 382 S.W.3d at 385 (where evidence revealed that the defendant pointed a loaded gun at his victim, pulled the trigger twice, and then fled the scene, no rational jury could have concluded that his conduct was merely reckless, despite the defendant's testimony that he did not intend to kill his victim); *Mathis,* 67 S.W.3d at 926 (where evidence revealed that the defendant walked into an apartment and fired a high-powered rifle at three separate victims, no rational juror could have concluded that defendant was guilty only of manslaughter and not murder, despite the defendant's claim that his conduct was not intentional); *Forest v. State,* 989 S.W.2d 365, 368 (Tex.Crim.App. 1999) (defendant's act of shooting a victim in the buttocks was "clearly dangerous to human life," and defendant's testimony that he did not intend to kill his victim was insufficient to warrant an instruction on the lesser-included offense of manslaughter).[8]

Our review of the record in the present case indicates that Appellant similarly engaged in conduct that was "clearly dangerous to human life." Appellant not only admitted in his

---

[8] *See also Wesbrook v. State,* 29 S.W.3d 103, 113-14 (Tex.Crim.App. 2000) (given the state of the entire record, which established that appellant shot multiple victims at close range, appellant's statement that he did not intend to kill his victims was not evidence from which a jury could have rationally concluded that appellant was only guilty of aggravated assault); *Godsey*, 719 S.W.2d at 584-85 (appellant's statement that he did not intent to kill his victim did not warrant a lesser-included instruction on aggravated assault or reckless conduct where the appellant pointed a loaded gun directly at a group of police officers, thereby manifesting "only the intent to kill the officer" and not to merely act recklessly or in a threatening manner); *King v. State,* No. 05-12-00842-CR, 2014 WL 310113, at *5-8 (Tex.App. – Dallas Jan. 28, 2014, pet. ref'd) (mem. op., not designated for publication) (no rational jury could have found defendant's conduct was reckless, where the defendant fired a gun multiple times at a bank guard, despite the defendant's claim that he was in a "confused" state of mind at the time of the killing); *Nevaraz v. State,* 270 S.W.3d 691, 694-95 (Tex.App. – Amarillo 2008, no pet.) (defendant's claim that he accidentally stabbed his victim did not warrant a manslaughter instruction); *Arnold*, 234 S.W.3d at 670-71 (where the record indicated that the defendant pointed a gun directly at his victim and shot him at close range, the defendant's statements that he did not intend to kill the victim did not constitute evidence upon which a jury could have rationally found that the defendant's actions were merely reckless); *Martinez v. State,* 16 S.W.3d 845, 848 (Tex.App. – Houston [1st Dist.] 2000, pet. ref'd) (where defendant stabbed his victim and cut his throat, his conduct was "clearly dangerous to human life," and his testimony that he did not intend to kill his victim was not sufficient evidence to warrant an instruction on manslaughter); *see also Ventura*, 2001 WL 541090, at *5-6 (defendant's act of firing five shots at his victims were clearly intentional acts, and defendant was therefore not entitled to an instruction on either manslaughter or criminally negligent homicide, despite his claim at trial that he was unaware that his shots had hit anyone).

19

videotaped confession to swinging multiple times at his victim, who he acknowledges was much smaller than him, but the virtually unrefuted evidence at trial established that Appellant thereafter strangled his victim with a belt, a fact that he appears to be now willing to acknowledge on appeal. Further, the physical evidence established that the victim did not die from, or even suffer, a head injury, but rather from being strangled by a belt. Just as no rational jury could determine that shooting a victim at close range or stabbing a victim in the throat are acts of mere recklessness or negligence, we similarly believe that no rational jury could find that strangling a victim with a belt was an act that was merely reckless or negligent. Therefore, despite any statements in the record from Appellant disavowing his intent to kill or seriously injure the victim, we conclude there was no "affirmative" evidence presented at trial that warranted instructions on the lesser-included offenses of either manslaughter or criminally negligent homicide.

Moreover, Appellant did not focus at trial on whether his conduct was merely reckless or negligent. Instead, in both his opening and closing arguments, Appellant's counsel focused almost exclusively on the claim that Appellant acted in self-defense after the victim "attacked" him, and counsel repeatedly asked the jury to acquit Appellant for that reason. Appellant also requested and received a jury instruction on the issue of self-defense.

A claim of self-defense is incompatible with a claim of recklessness or negligence. In order to raise a claim of self-defense, a defendant must admit to the underlying criminal act and its culpable mental state, and then raise the defense as justification for his conduct. *See, e.g., Carrasco-Flores v. State,* No. 08-13-00232-CR, 2015 WL 2357631, at \*6 (Tex.App. – El Paso May 14, 2015, no. pet. h.) (not designated for publication) (defendant who contends that victim was injured by accident has not confessed to elements of the offense and cannot raise self-defense)

20

(citing *Shaw v. State,* 243 S.W.3d 647, 657–58 (Tex.Crim.App. 2007), and *Ex parte Nailor,* 149 S.W.3d 125, 133 (Tex.Crim.App. 2004)). Therefore, in a long line of cases, the courts have concluded that raising self-defense in a murder trial, and thereby impliedly admitting that the conduct was intentional, is "inconsistent with a claim that the defendant acted only recklessly," thereby precluding an instruction on the lesser-included offenses of manslaughter and criminally negligent homicide.[9] *See, e.g., Montemayer v. State,* No. 14-13-01045-CR, 2015 WL 1928738, at *1-3 (Tex.App. – Houston [14th Dist.] Apr. 28, 2015, no. pet. h.) (mem. op., not designated for publication) (where defendant testified that he shot his victim in self-defense, the trial court properly refused to give an instruction on manslaughter); *Nevarez v. State,* 270 S.W.3d 691, 694-95 (Tex.App. – Amarillo 2008, no pet.) (where defendant in murder trial admitted purposefulness of actions that led to death and argued self-defense, he was not entitled to manslaughter charge); *Martinez*, 16 S.W.3d at 845 (where defendant testified that he acted in self-defense, the trial court properly refused to give manslaughter instruction); *Huerta*, 2008 WL 4603473, at *2-4 (appellant's testimony that he shot at his victim in self-defense precludes an instruction on an accidental or reckless murder, as one cannot accidentally or recklessly act in self-defense); *Avila v. State,* 954 S.W.2d 830, 843 (Tex.App. – El Paso 1997, pet. ref'd) (defendant's claim that he acted in self-defense precluded an instruction on reckless discharge of a weapon, as one cannot act accidentally or recklessly in self-defense); *Johnson v. State*, 915 S.W.2d 653, 659-60 (Tex.App. – Houston [14th Dist.] 1996, pet. ref'd) (where defendant testified that he

---

[9] In *Alonzo v. State,* 353 S.W.3d 778 (Tex.Crim.App. 2011), the Court of Criminal Appeals cited this line of cases, recognizing that the courts in *Nevaraz, Martinez, and Avila* all concluded that the defendants therein were not entitled to manslaughter instructions because they claimed at trial they had "acted intentionally in self-defense, not merely recklessly." Although the Court in *Alonzo* found these cases inapplicable to the situation it was considering, the Court nevertheless expressly stated that it was not calling these cases "into question." *Id.* at 782.

21

acted in self-defense, the trial court properly refused to give instructions on lesser-included offenses involving elements of recklessness and criminal negligence).

Accordingly, we conclude that by affirmatively raising the issue of self-defense at trial, Appellant impliedly admitted that he acted intentionally in causing the victim's death, and was thereby precluded from receiving an instruction on the lesser-included offenses of manslaughter and criminally negligent homicide. Issues Three and Four are overruled.

### Sufficient Evidence Supported the Jury's Finding that Appellant Did Not Act with "Sudden Passion"

In his fifth and sixth issues, Appellant contends the evidence was both factually and legally insufficient to support the jury's affirmative rejection of his claim that he did not act with "sudden passion" when he killed the victim during their altercation.

*Standard of Review*

The Court of Criminal Appeals recently discussed the standard of review courts should apply when analyzing challenges to the legal and factual sufficiency of an affirmative defense. *Butcher v. State,* 454 S.W.3d 13, 20 (Tex.Crim.App. 2015). In *Butcher*, the Court clarified that although it had abolished factual-sufficiency review as it applies to criminal convictions in *Brooks v. State,* 323 S.W.3d 893 (Tex.Crim.App. 2010), "[a]ffirmative defenses may be evaluated for [both] legal and factual sufficiency[.]" *Butcher,* 454 S.W.3d at 20.

In a legal-sufficiency review of an affirmative defense, the Court explained, "reviewing courts should first assay the record for a scintilla of evidence favorable to the factfinder's finding and disregard all evidence to the contrary unless a reasonable factfinder could not." *Id.* (citing *Matlock v. State,* 392 S.W.3d 662, 669–70 (Tex.Crim.App. 2013)). In a review of this nature, a jury's rejection of a defendant's affirmative defense "should be overturned for lack of legal

sufficiency only if the appealing party establishes that the evidence conclusively proves his affirmative defense, and 'no reasonable [factfinder] was free to think otherwise.'" *Id.* (citing *Matlock,* 392 S.W.3d at 670).

When examining the factual sufficiency of a jury's rejection of an affirmative defense, however, an appellant court must examine the evidence in a neutral light, but may only overrule a jury's verdict if it is against the "great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Id.* In conducting this review, the reviewing court must not usurp the function of the jury by substituting its judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony, and must instead give deference to a jury's determination of those issues. *Matlock,* 392 S.W.3d at 671; *see also Johnson v. State,* 23 S.W.3d 1, 9 (Tex.Crim.App. 2000).

*Applicable Law*

At the punishment stage of a murder trial, a defendant may raise the issue whether he caused the death of his victim under the "immediate influence of sudden passion arising from an adequate cause." If the defendant proves sudden passion by a preponderance of the evidence, the offense of murder is punished as a second-degree felony, rather than as a first-degree felony. TEX. PENAL CODE ANN. § 19.02(d) (West 2011); *see also McKinney v. State*, 179 S.W.3d 565, 569 (Tex.Crim.App. 2005) (sudden passion is a mitigating circumstance that, if found by the jury to have been proven by a preponderance of the evidence, reduces the offense from a first degree felony to a second degree felony); *Wooten v. State,* 400 S.W.3d 601, 605 (Tex.Crim.App. 2013).

The Code defines "[s]udden passion" as "passion directly caused by and arising out of provocation by the individual killed . . . which passion arises at the time of the offense and is not

23

solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2). The Code defines "[a]dequate cause" as a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* at § 19.02(a)(1).

"'Sudden passion' requires first that the record contain objective evidence that direct provocation by the victim or someone acting with the victim occurred at the time of the killing." *Naasz v. State*, 974 S.W.2d 418, 423-24 (Tex.App. – Dallas 1998, pet. ref'd) (citing *Merchant v. State,* 810 S.W.2d 305, 310 (Tex.App. – Dallas 1991, pet. ref'd)). Evidence of "prior provocation" alone is not enough; the provocation must be of such a nature that it elicits more than merely "ordinary anger." *Id*. The record must also contain evidence from which the jury could subjectively decide that the defendant killed the victim while in an "excited and agitated state of mind arising out of the direct provocation." *Id*. at 424.

*Analysis*

Appellant claims the evidence established that the victim adequately provoked him when she became "very angry" with him during their argument, "attacked him with her fists," "beat [him] with her fists," and "threaten[ed] to taser him." According to Appellant, the evidence also demonstrated that the victim's conduct caused him to "fear[] for his life," as he knew the victim had a "violent character." Appellant further claims that the evidence demonstrated that after he was provoked by the victim, he "erupted and struck [the victim] back and strangled her with a belt," and that there was "strong evidence that rage and terror existed in [his] mind . . . at the time he first struck [the victim] all the way through the moments it took to strangle her."

24

Appellant contends that under this set of facts, no rational jury could have concluded that there was insufficient provocation to cause an ordinary person to be incapable of cool reflection, and he therefore asserts that the evidence was legally insufficient to support the jury's rejection of his claim of sudden passion. Again relying on this same set of facts, Appellant also claims that the jury's rejection of his sudden passion defense was against the great weight of the evidence, and was therefore factually insufficient to support the jury's verdict. We disagree with both arguments.

Initially, we note that Appellant's summary of the facts is without citation to the record, and he has taken great liberty in his characterization of the evidence. As there were no other witnesses to the altercation, and Appellant did not testify at trial, we must presume that Appellant is basing his factual summary on the statements he made in his videotaped confession. However, Appellant never stated during his confession that the victim "beat Appellant with her fists," and there is no evidence in the record to establish that the victim even made contact with Appellant when she swung at him. In addition, Appellant never stated that the victim made any immediate threat to "taser" him; instead, Appellant stated only that the victim threatened to return at an unspecified future time and bring a Taser with her. Moreover, Appellant never expressed that he was in a state of "terror" or "rage" during the altercation, and Appellant fails to point to any "strong evidence" in the record to suggest that he was in any such emotional state when he killed the victim.[10]

---

[10] It is well-settled that "[a]ssertions in an appellate brief that are unsupported by the record will not be accepted as fact" by a reviewing court. *Ex parte Preston,* 833 S.W.2d 515, 519 (Tex.Crim.App. 1992)(op. on reh'g); *see also Ramirez v. State,* No. 08-05-00386-CR, 2007 WL 1792961, at *1 (Tex.App. – El Paso June 21, 2007, no pet.) (not designated for publication ) (court will not consider statements made in party's pleadings or correspondence that are not supported by appellate record).

At most, Appellant's videotaped confession provided evidence that the victim became angry with Appellant, threatened to return with a "Taser," and then swung at him. Appellant provided no evidence that the victim, who he acknowledges was much smaller than him, threatened him with a weapon, or engaged in any other threatening or provoking conduct. Under this set of facts, the jury was clearly free to conclude that the victim's conduct was not of such a nature that it would have produced the requisite degree of "anger, range, resentment or terror" in a reasonable person; instead, the jury could have believed the victim's conduct would have, at most, produced an "ordinary level" of anger or fear in a reasonable person under these circumstances. *See Castellano v. State,* No. 01-14-00486-CR, 2015 WL 3981807, at *2 (Tex.App. – Houston [1st Dist.] June 30, 2015, no. pet. h.) (mem. op., not designated for publication) (jury was free to reject defendant's claim of sudden passion where the only evidence presented at trial suggested that the victim had yelled at the defendant, called him names, and attempted to strike him with her fists before defendant strangled his victim); *see also McKinney v. State,* 179 S.W.3d 565, 570 (Tex.Crim.App. 2005) (yelling and pushing do not constitute adequate cause sufficient to raise issue of sudden passion).

In addition, although the jury could have inferred from the statements made by Appellant in his videotaped confession that he was in some state of fear when the victim swung at him during their altercation, there was no evidence presented at trial to suggest that Appellant's level of fear was such that he was "incapable of cool reflection" when he reacted by striking and later strangling his victim. A "mere claim of fear" by a defendant does not, standing alone, establish the existence of sudden passion arising from an adequate cause. *See Gonzales v. State,* 717 S.W.2d 355, 357 (Tex.Crim.App. 1986) (citing *Daniels v. State,* 645 S.W.2d 459 (Tex.Crim.App. 1983)); *see also*

26

*Latham v. State,* No. 12-05-00146-CR, 2006 WL 2065334, at *7 (Tex.App. – Tyler July 26, 2006, no pet. h.) (mem. op., not designated for publication) (despite defendant's testimony that he was "scared and terrified" of the victim, the jury was still free to reject his claim of sudden passion, as the jury could have rationally concluded that the defendant was not telling the truth or that his "terror" was objectively unreasonable). In fact without more, a trial court is justified in refusing to give the jury an instruction on sudden passion. *See Gonzales,* 717 S.W.2d at 357; *see also Villalba*, 2015 WL 1514453, at *4-7 (defendant's testimony that he felt "kind of frightened" by the victim's conduct did not raise the issue of sudden passion, and therefore court acted properly in refusing to instruct the jury on the issue).

In the present case, despite the weak nature of the evidence presented at trial, Appellant was given the benefit of a jury instruction on the issue of sudden passion, and the jury simply rejected his claim. Based on our review of the record, we conclude that the jury's rejection of Appellant's claim of sudden passion was both factually and legally supported by the evidence, and we therefore overrule Appellant's fifth and sixth points of error.

### The Trial Court Properly Instructed the Jury that its Verdict on Sudden Passion had to be Unanimous

In his final issue, Appellant contends the trial court erroneously charged the jury on sudden passion by failing to instruct the jury that its verdict on sudden passion must be unanimous, and because the "verdict form[s]" on this issue were "wrong" as well.[11]

*Analysis of the Jury's Charge*

---

[11] As previously discussed above, when reviewing claims of jury charge error, we first determine whether an error actually exists in the charge. If error exists, and the defendant made no objection at trial, we will not reverse for jury charge error unless the record shows appellant suffered egregious harm as a result of the error.

27

As discussed above, during the punishment phase of Appellant's trial, the trial court provided the jury with an instruction on the affirmative defensive of "sudden passion." The charge correctly apprised the jury of the statutory definition, and further advised the jury that if it believed Appellant proved by a preponderance of the evidence that he acted "under the immediate influence of sudden passion arising from an adequate cause," it was required to make an affirmative finding on that issue. The court also instructed the jury that if it did not believe Appellant proved by a preponderance of the evidence that he acted under the influence of sudden passion, it was required to make a negative finding on that issue. After instructing the jury that it was also required to make affirmative findings on the State's enhancement allegations as well, the trial court concluded its charge by instructing the jury that its verdict on punishment "must be unanimous."

Appellant did not object to the jury charge at trial. He now claims the charge was erroneous because it failed to specifically instruct the jury that its verdict on sudden passion had to be unanimous. In this regard, Appellant cites *Sanchez v. State*, 23 S.W.3d 30 (Tex.Crim.App. 2000), for the proposition that a jury's verdict on the issue of sudden passion must be unanimous, and claims that the trial court's failure to instruct the jury on the unanimity requirement deprived him of a "fair trial."

We agree with Appellant that *Sanchez* stands for the proposition that a jury's verdict on sudden passion must be unanimous. His reliance on *Sanchez* is otherwise misplaced, however. In *Sanchez*, the trial court had given the jury an instruction indicating that its verdict had to be unanimous if it found in favor of the defendant on the issue of sudden passion, but the instruction erroneously indicated that the jury did *not* have to reach a unanimous verdict if it chose to enter a

negative finding on the issue. Further, a poll of the jury in *Sanchez* revealed that three of the jurors had wanted to find in the defendant's favor on the issue of sudden passion, but because of the trial court's instructions, the majority prevailed, and the jury found against the defendant on a less than unanimous basis. *Id*. at 32.

Although the defendant in *Sanchez* had not objected to the charge at trial, the court of appeals concluded that the defendant was entitled to a new punishment hearing, as the trial court's erroneous charge clearly deprived the defendant of his right to a unanimous verdict, and resulted in egregious harm to the defendant, particularly in light of the jury poll indicating that the verdict was in fact decided on a less than unanimous basis. *Id*. at 33. The Court of Criminal Appeals affirmed the appellate court's decision, agreeing that the erroneous jury charge deprived the defendant of his right to a unanimous verdict, warranting a new punishment hearing. *Id.* at 34; *see also Bradshaw v. State,* 244 S.W.3d 490, 497 (Tex.App. – Texarkana 2007, pet. ref'd) (finding similarly worded jury instruction erroneous).

In the present case, however, the trial court's jury charge did not suffer from a similar defect, and in no way misled the jury on the issue of jury unanimity. Instead, the jury charge properly informed the jury that its verdict had to be unanimous, but simply did so at the end of the charge in general terms, rather than when instructing the jury on the specific issue of sudden passion. In addition, the trial court reminded the jury before it retired to the jury room to deliberate punishment, that its verdict had to be unanimous.[12] Moreover, after the jury announced its sentence, the presiding judge affirmed that its verdict was unanimous, and there is nothing in

---

[12] Before the jury began its deliberations on punishment, the trial court stated: "I wish you good luck in your efforts to achieve your unanimous verdict in this case."

the record to suggest that the verdict was entered on less than a unanimous basis as it was in the *Sanchez* case.

We also note that several other courts addressing this same issue have held that it is not error for a court to wait until the end of a jury charge to inform the jury that its entire verdict must be unanimous, and that it is not necessary for the trial court to also specifically recite that the verdict on the issue of sudden passion must be unanimous. *See, e.g., Barfield v. State,* 202 S.W.3d 912, 918 (Tex.App. – Texarkana, 2006, pet. ref'd) (jury was not misinformed on jury unanimity in finding sudden passion, but to the contrary, the court's general instruction "appropriately guaranteed a unanimous finding on the sudden passion issue"); *see also Cartier v. State*, 58 S.W.3d 756, 760 (Tex.App. – Amarillo 2001, pet. ref'd) (jury charge was not fundamentally flawed where it provided a general instruction on jury unanimity, even though it did not expressly instruct the jury that its finding on sudden passion had to be unanimous); *Latham*, 2006 WL 2065334, at *8 (concluding there was no error where the trial court's charge did not specifically recite that the jury's determination on sudden passion had to be unanimous, but properly gave a general instruction on jury unanimity); *Campa*, 2009 WL 1887123, at *6-7 (same).

Because the jury's charge in the present case similarly informed the jury that its verdict had to be unanimous, and because the jury charge did not permit the jury to decide the issue of sudden passion on less than a unanimous verdict, we find no error in the jury charge.

*Analysis of the Verdict Forms*

Although his argument is somewhat unclear, Appellant also criticizes the verdict forms utilized by the trial court, contending that they were "wrong" because they did not require the jury

to expressly make a "yes or no" finding on the issue of sudden passion. We conclude the verdict forms that were utilized adequately ensured that the jury made an affirmative finding on the issue of sudden passion.

The verdict forms on punishment were broken into two sets. The first set was labeled, "Verdict Forms if the Answer to the Special Issue of Sudden Passion True, Use the Following Verdict Forms." This first set of forms required the jury to make findings regarding the enhancement allegations, and to assess punishment against Appellant within the range available for second degree felonies (as would be required if the jury found sudden passion to be true). The second set of forms was labeled, "Verdict Forms if you find the Special Issue of Sudden Passion Not True." This second set of forms required the jury to make findings regarding the enhancement allegations, and to assess punishment against Appellant within the range available for first degree felonies (as would be required if the jury found sudden passion not true). Both sets of forms indicated that the jury's verdict had to be unanimous with regard to the enhancement allegations, but did not indicate that they were required to make a unanimous finding with respect to the sudden passion issue. The presiding juror signed the verdict form in the second set, labeled "Sudden Passion Issue Not True," stating that the jury had unanimously found both enhancements to be true, and that they were assessing Appellant's sentence at life in prison.

While these forms did not expressly require the jury to write that its finding on the sudden passion issue was true or not true, the jury was required to select between the two sets of verdict forms based on whether "the Answer to the Special Issue of Sudden Passion [was] True" or "Not True." The selection process therefore required the jury to make an "affirmative finding" on the issue of Appellant's claim of sudden passion. Since the jury was also instructed in the jury charge

31

that it was required to make an affirmative finding on sudden passion, we cannot conclude that the jury was in any way confused about its duty to make this finding. Further, by using the second set of verdict forms, labeled as "Sudden Passion Issue Not True" when entering the sentence in Appellant's case, there can be little doubt that the jury made an affirmative finding of "not true" on this issue. We therefore overrule Appellant's seventh issue.

### Reformation of Error in the Judgment

The trial court's judgment currently reflects the notation "N/A" regarding Appellant's plea and the jury's findings to the two enhancement paragraphs. The reporter's record, however, reveals that Appellant pleaded "not true" to the State's notice of enhancements, and that the jury made "true" findings as to both enhancement paragraphs. An appellate court is authorized to reform or modify the judgment to conform to the record of the proceedings and to render an appropriate judgment, in accordance with its authority under Rule 43.2 of the Texas Rules of Appellant Procedure. *See French v. State,* 830 S.W.2d 607, 609 (Tex.Crim.App. 1992) (appellate court has authority to reform a judgment to include an affirmative finding to make the record speak the truth when the matter has been called to its attention by any source); *Bigley v. State,* 865 S.W.2d 26, 27–28 (Tex.Crim.App. 1993) (appellate court has the power to modify incorrect judgments when the necessary data and information are available to do so). We therefore modify the trial court's written judgment to reflect Appellant's pleas of "not true" to the State's notice of enhancements, and the jury's "true" enhancement findings to the two enhancement paragraphs. TEX.R.APP.P. 43.2(b).

### CONCLUSION

32

The trial court's judgment as modified is affirmed. The trial court certified Appellant's right to appeal in this case, but the certification does not bear Appellant's signature indicating that he was informed of his rights to appeal and file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. *See* TEX.R.APP.P. 25.2(d). The certification is defective. To remedy this defect, this Court ORDERS Appellant's attorney, pursuant to TEX.R.APP.P. 48.4, to send Appellant a copy of this opinion and this Court's judgment, to notify Appellant of his right to file a pro se petition for discretionary review, and to inform Appellant of the applicable deadlines. *See* TEX.R.APP.P. 48.4, 68. Appellant's attorney is further ORDERED to comply with all of the requirements of TEX.R.APP.P. 48.4.

STEVEN L. HUGHES, Justice

October 21, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)